IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| RICHARD JOSEPH BROCKMAN, <br> Plaintiff, <br> v. <br> OCWEN LOAN SERVICING LLC, et al., <br> Defendants. | 1:13-cv-2230-WSD |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Richard Joseph Brockman, Jr.'s ("Plaintiff") Motion for an Extension of Time [24], Motion for Reconsideration [26] of the Court's October 9, 2013, Order [20], and Motion to Amend his Complaint [27].

**I.   BACKGROUND**

A.   Facts

In May 2011, Plaintiff obtained a loan from First Ohio Banc & Lending, Inc. ("First Ohio") to refinance his existing first and second home mortgage loans. Plaintiff's second mortgage was held by Ocwen Loan Servicing, LLC ("Ocwen"). First Ohio selected BCHH, Inc. ("BCHH") to act as its settlement agent for the transaction.  First Ohio and BCHH scheduled the settlement date and disbursement

date as May 13 and 18, 2011, respectively.  (Am. Compl. [27.1] at 3).

On May 6, 2011, Ocwen provided Plaintiff a payoff quote for his loan.  The payoff amount was $53,582.90, and the payoff quote was valid through May 13, 2011.  (Id. at 37).

On May 18, 2011, Ocwen received payoff funds, in the amount of $53,852.90, from BCHH on Plaintiff's behalf.  (Id.).  Ocwen placed the funds "in a suspense (partial-payment) credit account, as it was [sic] insufficient to pay off [Plaintiff's] loan."  (Id.).[1]

In June and July, 2011, Ocwen contacted Plaintiff and told him that there was an issue with insufficient funds in the transfer from the settlement company.  (Id. at 4).

On June 30, 2011, Ocwen provided an updated payoff quote for Plaintiff's loan.  It stated that the payoff amount was $1,803.33, and that the payoff quote was valid through July 29, 2011.  (Id. at 29-30).

On July 8, 2011, BCHH "admitted that [it] had miscalculated the interests [sic] to Ocwen and had sent insufficient funds to Ocwen."  (Id. at 5).

On August 18, 2011, BCHH made a payment of $339.45 to Ocwen toward Plaintiff's loan.  (Id. at 7, 60).

---

[1]    Plaintiff asserts that this was against Ocwen's own policy, which would have been to return the insufficient funds to the remitter.  (Id. at 5).

2

In December 2011, Plaintiff received from Ocwen the "release/discharge of [his] loan." (Id. at 8).

In January 2012, Ocwen filed with the Internal Revenue Service a Form 1099-C, showing that Ocwen had cancelled the remaining debt Plaintiff owed to Ocwen. (Id.).

In July 2012, Plaintiff sought to refinance his mortgage again, but "was informed that his credit rating was insufficient [sic] high enough to qualify." (Id.). Plaintiff asserts that he "learned that his credit rating was adversely affected by Ocwen reporting to the various credit agencies that the account was 30, 60 and 90 days late and the account was settled for less than the amount" owed. (Id.).

In July, September, October and November of 2012, Plaintiff asserts, he filed disputes with the "major credit reporting agencies" regarding the allegedly false information reported to them by Ocwen. (Id. at 8-10). Plaintiff contends that, despite his letters to Ocwen and the disputes he filed with credit reporting agencies, Ocwen continued, until July 2013, to report negative information about Plaintiff's credit history. (Id. at 13).

B.   Procedural History

On July 3, 2013, Plaintiff, proceeding *pro se*, filed his original Complaint [1] against Ocwen, BCHH and First Ohio (collectively, "Defendants"). Plaintiff

asserted claims under Georgia law for breach of contract (Count I), negligence and malpractice (Count II), defamation by libel (Count III), and litigation expenses (Count IV), based on his assertion that Defendants improperly and falsely reported negative information concerning Plaintiff's credit history.

On July 19, 2013, the Court, after reviewing Plaintiff's Complaint, issued an order (the "Show Cause Order") [6] addressing the Court's subject matter jurisdiction over this action. The Court found that, because the Complaint asserts only state law causes of action, the only possible basis for the exercise of the Court's subject matter jurisdiction would be diversity of citizenship. The Court found further that the Complaint did not establish diversity jurisdiction because Plaintiff failed to allege sufficient facts to show the citizenship of Defendants. The Court specifically noted that Plaintiff failed to allege the principal places of business of BCHH and First Ohio, both of which are corporations, and that Plaintiff failed to allege the citizenship of the members of Ocwen, a limited liability company. The Court directed Plaintiff to identify the citizenship of each Defendant.

On August 19, 2013, Plaintiff filed his response [11] to the Show Cause Order. Plaintiff asserted that BCHH is a Pennsylvania corporation with its principal place of business in Pennsylvania, and that First Ohio is an Ohio

corporation with its principal place of business in Ohio.  Plaintiff did not identify the members of Ocwen and did not identify the citizenship of Ocwen's members because, Plaintiff claimed, this information was not available to him.

On October 9, 2013, the Court dismissed this action without prejudice for lack of subject matter jurisdiction [20].  The Court found that Plaintiff failed to show that the parties were diverse because he did not identify the members of Ocwen or their citizenship.  The Court noted that Plaintiff could file a new complaint if he were able to provide the required jurisdictional information about Ocwen.

On November 7, 2013, Plaintiff moved to extend the time to file a motion for reconsideration of the Court's October 9th Order.[2]  Plaintiff asserts that "he believes that he met the Courts [sic] request and showed residence of both managing members/managers of Ocwen LLC as being in Florida and Virgin Islands as based on Defendant's [sic] Ocwen's own certified Annual Report to the State of Florida."  ([24] at 2-3).[3]

---

[2]   The Court notes that Plaintiff requested to extend to November 21, 2013, the time to file a motion for reconsideration.  Although he did not file his Motion for Reconsideration until November 25, 2013, in light of Plaintiff's *pro se* status, his Motion for an Extension of Time [24] is granted *nunc pro tunc*.

[3]   Plaintiff relies on Attachments E and F to Plaintiff's Response [11] to the Court's July 19, 2013, Show Cause Order.  These attachments show mailing addresses for Ocwen Loan Servicing, LLC, in Wilmington, Delaware and in

On November 25, 2013, Plaintiff filed his Motion for Reconsideration [26]. Plaintiff asserts, for the first time, that when the Court issued its October 9th Order, he was in the process of amending his complaint to include a federal law claim which "would eliminate the [d]iversity issue." ([26] at 3).

Also on November 25, 2013, Plaintiff filed his Motion to Amend his Complaint [27]. Plaintiff's proposed Amended Complaint asserts that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by falsely reporting negative information concerning his credit history. Plaintiff also asserts claims for violation of O.C.G.A. § 51-1-8 (breach of a private duty) and O.C.G.A. § 51-1-6 (breach of a legal duty), and seeks to recover litigation expenses under O.C.G.A. § 13-6-11.

**II.   DISCUSSION**

    A.   Plaintiff's Motion for Reconsideration

"A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)." Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 n.5 (11th Cir. 1993). The Court

---

West Palm Beach, Florida. ([11] at 11-13). Attachment F shows addresses for two "managers" of Ocwen. (Id. at 12-13). The information provided does not disclose the citizenship of Ocwen or the members of the limited liability company.

does not reconsider its orders as a matter of routine practice.  LR 7.2 E., NDGa.  The Court's Local Rules require the parties file any such motions for reconsideration "within twenty-eight (28) days after entry of the order or judgment."  Id.

Motions for reconsideration under Rule 59(e) are only appropriate where there is newly-discovered evidence[4] or a need to correct a manifest error of law or fact.  See Hood v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008) (citing Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996)); Arthur, 500 F.3d at 1343 ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."); Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999).

Motions for reconsideration under Rule 60(b) only are appropriate where there is "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, a void judgment, or a judgment that has been satisfied or is no longer applicable.  Fed. R. Civ. P. 60(b).

---

[4]   Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered.  See Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007); see also Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

Motions for reconsideration under either Rule 59(e) or Rule 60(b) are left to the sound discretion of the district court. See Region 8, 993 F.2d at 806. A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. See Arthur, 500 F.3d at 1343; O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992); Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Jones v. S. Pan Servs., 450 F. App'x 860, 863 (11th Cir. 2012) ("A motion to alter or amend a judgment cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment."); Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

Plaintiff seeks reconsideration pursuant to Rule 60(b). Plaintiff does not assert the existence of "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or that the judgment has been satisfied or is no longer applicable.[5] To the extent Plaintiff asserts that dismissal was improper because

---

[5] To the extent Plaintiff intended to move for reconsideration pursuant to Rule 59(e), Plaintiff does not rely on any newly discovered evidence, an intervening development or change in controlling law, or a need to correct a clear error of law

8

Defendants did not raise the issue of subject matter jurisdiction, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006); see also Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

Although Plaintiff asserted in his Motion for an Extension of Time that "he met the Courts [sic] request and showed residence of both managing members/managers of Ocwen LLC as being in Florida and Virgin Islands as based on Defendant's [sic] Ocwen's own certified Annual Report to the State of Florida," Plaintiff did not raise this argument in his Motion for Reconsideration and he appears to have abandoned it.  Cf. Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998).  Even if Plaintiff had not abandoned this argument, the Eleventh Circuit has consistently held that "[r]esidence alone is not enough" to show citizenship.  Travaglio v. Am. Express Co., 735 F.3d 1266, 1269 (11th Cir. 2013); see also McCormick v. Aderholt, 293 F.3d 1254, 1257–58 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction;" domicile requires both residence in a state and "an intention to remain there

---

or fact.  Plaintiff's Motion for Reconsideration is denied for this additional reason.  See Arthur, 500 F.3d at 1343; Jersawitz, 71 F. Supp. 2d at 1344.

indefinitely."). Because Plaintiff has not identified, in any of his filings, the *citizenship* of Ocwen or the members of the limited liability company, Plaintiff fails to show that complete diversity exists among the parties. The Court does not have subject matter jurisdiction, based on diversity of citizenship, over this action and Plaintiff's Motion for Reconsideration on this ground is denied.

Plaintiff next argues that he is entitled to relief from the Court's October 9th Order because his Amended Complaint asserts claims under the FCRA, which, he claims, is sufficient to confer federal question jurisdiction over this action.

### B.     Plaintiff's Motion to Amend

Because this action was dismissed by the Court in its October 9th Order, Plaintiff was required to obtain leave to file his Amended Complaint. See Fed. R. Civ. P. 15; Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) ("Rule 15(a), by its plain language, governs amendment of pleadings before judgment is entered; it has no application after judgment is entered."); Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, 724 F.2d 1552, 1556 (11th Cir. 1984) ("[A]fter a complaint is dismissed the right to amend under Rule 15(a) terminates."). "Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and

futility of the amendment." Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003); accord Foman v. Davis, 371 U.S. 178, 182 (1962).

In his Amended Complaint, Plaintiff seeks to add claims for willful and negligent violations of the FCRA. Although Plaintiff argues that he has been diligent, these claims are based on allegedly false information Defendants reported in 2011 and 2012. These facts were known to Plaintiff at the time he filed his Complaint on July 3, 2013, and he admits in his Amended Complaint that he is "looking to damages inflicted in 2012 from July through February of 2013." (Am. Compl. ¶ 86). Plaintiff fails to explain why he could not have asserted these claims in his Complaint. "Such unexplained tardiness constitutes undue delay." Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1218 (11th Cir. 2004); see also Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (denial of motion to amend was proper where "there seems to be no good reason why [the plaintiff] could not have made the motion earlier"). Leave to amend may be denied on this basis alone.

Even if his Motion to Amend were timely, the claims Plaintiff now seeks to assert would be futile. "[T]he denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999). "Because justice does not

require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

1. Violation of the FCRA

Plaintiff appears to assert that Ocwen violated Section 1681s-2 of the FCRA, which imposes certain duties upon Ocwen as a furnisher of information to consumer reporting agencies ("CRAs").[6] Section 1681s-2(a) requires a furnisher of information to submit accurate information to CRAs. Section 1681s-2(b) requires a furnisher to, among others, investigate and respond promptly to notices of customer disputes and to modify, delete or permanently block the reporting of information found to be inaccurate.

---

[6] Plaintiff does not allege that BCHH or First Ohio was a furnisher of credit information, and the information that Plaintiff claims was false—that Plaintiff was late in his payments to Ocwen and that his account with Ocwen was settled for less than the amount owed—was reported to CRAs by Ocwen. Plaintiff fails to state a claim against BCHH or First Ohio for violation of the FCRA. See Harden v. JP Morgan Chase Bank, N.A., No. 1:13-cv-3535, 2014 WL 836013, at *7 (N.D. Ga. Mar. 4, 2014) (dismissing FCRA claim against defendant law firm where plaintiff did not allege law firm was a furnisher of credit information or that law firm received notice of dispute from a CRA; plaintiff claimed only that defendant bank reported information to CRAs) (citing Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) ("[T]he FCRA prohibits *furnishers of credit information* from providing false information.")).

The crux of Plaintiff's claim is that Ocwen reported false information to CRAs—specifically, that Plaintiff was 30, 60 and 90 days late in making his loan payments to Ocwen and that Plaintiff's account with Ocwen was settled for less than the amount owed.  The facts are that, in May 2011, Plaintiff refinanced his existing loan obligations, including his second mortgage held by Ocwen; that BCHH, as settlement agent, "miscalculated the interests [sic] to Ocwen and had sent insufficient funds to Ocwen" to satisfy Plaintiff's loan; that on June 30, 2011, Ocwen sent Plaintiff an updated payoff quote for his loan, stating that the payoff amount was $1,803.33, and that it was valid through July 29, 2011; and that, on August 18, 2011, BCHH paid to Ocwen $339.45.  (Am. Compl. ¶¶ 21-23, 31; Exs. 4, 6).  Plaintiff has not shown that Ocwen reported, or failed to correct, false information regarding Plaintiff's credit history.[7]  Plaintiff fails to state a claim for violation of Section 1681s-2.

---

[7]    That Court notes that, to the extent Plaintiff asserts that Ocwen violated Section 1681s-2(a), see Am. Compl. ¶¶ 87-88, the FCRA does not provide a private right of action for violation of Section 1681s-2(a).  See, e.g., Chipka v. Bank of America, 355 F. App'x 380, 383 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681s-2(c), (d); 15 U.S.C. § 1681s(c)(1)(B)) ("Congress, however, expressly reserved enforcement of subsection (a) to governmental agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to violations of § 1681s-2(b)."); Steed v. EverHome Mortg. Co., 308 F. App'x 364, 369-370 (11th Cir. 2009) ("Although § 1681s-2(a) of the FCRA prohibits any person from furnishing information to a CRA that the person knows is inaccurate . . . the statute explicitly bars private suits for violations of this

Because Plaintiff fails to state a viable claim for relief under federal law, and because Plaintiff has not shown that the parties are diverse, the Court lacks subject matter jurisdiction over this action.  Plaintiff's Motion to Amend his Complaint is denied as futile.  Plaintiff has not presented any grounds upon which to support granting relief from the Court's October 9th Order and his Motion for Reconsideration is denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Extension of Time [24] to file a Motion for Reconsideration is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration [26] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint [27] is **DENIED** and this matter is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED** this 17th day of September, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

section.").  Plaintiff has not, and cannot, state a claim for relief under Section 1681s-2(a) for this additional reason.

14